978 F.2d 1259
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
CUMBERLAND WOOD AND CHAIR CORPORATION, Robert Kupchick, and
Jerry Pawlak, Defendants-Appellants.
 Nos. 91-6058 to 91-6060.
 United States Court of Appeals, Sixth Circuit.
 Oct. 27, 1992.
 
 Before MILBURN and ALAN E. NORRIS, Circuit Judges, and KRUPANSKY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendants Jerry Pawlak, Robert Kupchick, and the Cumberland Wood and Chair Corporation appeal their criminal convictions for discharging industrial pollutants into the waters of the United States without having first obtained the permits required by 33 U.S.C. § 1342. The judgments of conviction were entered following conditional guilty pleas by all defendants, and the issue thus preserved for appeal is whether the district court correctly denied defendants' motion to dismiss the indictment on the grounds that it failed to charge a prosecutable offense. For the reasons that follow, we affirm.
 
 I.
 
 2
 Defendant Cumberland Wood and Chair Corporation is a manufacturer of furniture with its principal place of business in Somerset, Pulaski County, Kentucky. Defendant Jerry Pawlak was plant manager, and defendant Robert Kupchick was president of the corporation. On September 19, 1990, a four-count indictment was returned charging each of the defendants with knowingly discharging industrial pollutants into the waters of the United States in violation of 33 U.S.C. §§ 1311(a) and 1319(c)(2)(A). In particular, the indictment charged defendants with causing industrial waste to be discharged from a pipe into a ditch that flowed into a nearby pond.
 
 
 3
 On March 1, 1991, defendants filed a motion to dismiss all counts of the indictment "on the ground that such counts do not charge offenses which affect or involve navigable waters of the United States or waters of the United States and, therefore, such alleged offenses do not, and cannot, represent offenses against the United States for which these Defendants may be prosecuted." J.A. 36. The matter was heard on March 28, 1991, defendants arguing that the ditch and pond were not tributaries of any navigable stream and that the prosecution could not, therefore, be maintained. Defendants tried to offer proof to support these allegations, but the district court refused to take evidence at that point, stating:
 
 
 4
 I really don't think the Court should. I think I have to accept what the allegations are in the indictment as such. Mr. West [attorney for defendant Kupchick] says on its face it appears to be correct. I think it's a matter of proof at the trial. It's just as if, if the U.S. government had alleged in the indictment that the, there was property involved which was owned by the United States, and you come in to dismiss saying the U.S. doesn't own it, I would have to accept as true what they said about it and hear that at trial, I suppose.
 
 
 5
 J.A. 88.
 
 The court elaborated:
 
 6
 Well, don't you agree, or is there some authority to the contrary, that on a motion to dismiss an indictment, the Court has to consider the allegations of the indictment as true and then based upon that I have to make my decision? I can't prejudge things like the issue I said, about whether the government owns property. If the U.S. had said this is our property and you say no, it's not, we would move to dismiss, I have to accept what they say as true. And if they have set out in the indictment what constitutes an offense, then I have to accept it as true. And I can't go finding a lot of facts preindictment for purposes of dismissing, unless there is some contrary law about it.
 
 
 7
 J.A. 90-91.
 
 
 8
 During the discussion with the court, both parties stated their understanding of what the evidentiary facts would show, defendants contending that the ditch and pond were not tributaries of a navigable stream as a matter of law, and the government insisting that it could prove an overflow from the pond into tributaries of navigable waterways. The court ruled:
 
 
 9
 I think as a matter of fact, based upon what's listed in the indictment and what the U.S. asserts that it would prove here, that it would constitute a violation of the Act. That's the only thing that the Court right now can determine. I don't think it's appropriate to hear evidence here. I think that's a matter of considering at the time of trial. So that's, I am going to deny the motion to dismiss for all defendants.
 
 
 10
 If you want to, to proffer evidence, I think rather than the Court's taking the time to hear it here, the Court will allow you to proffer it either with, by way of affidavit or by depositions to be placed in the record within the next, say, thirty days, and then you can have it in the record. Because I just don't think that the Court should consider evidence outside the record that we have right now in support of any motion to dismiss.
 
 
 11
 J.A. 97-98. From this record, it is obvious that the district court denied defendants' motion to dismiss because it believed that, as a legal matter, the indictment stated a prosecutable offense. The court took no evidence on this issue, although it allowed the parties to make such subsequent proffers of proof as they desired.
 
 
 12
 Upon the court's denial of their motion to dismiss, all defendants indicated a willingness to proceed with the entry of conditional guilty pleas. Defendants Pawlak and Kupchick entered pleas to superseding one-count informations charging violations of 33 U.S.C. §§ 1311(a) and 1319(c)(1)(A), which alleged the negligent discharge of pollutants rather than the knowing discharge thereof (as alleged in the original indictment). Defendant Cumberland Wood and Chair Corporation pled guilty to count 1 of the original indictment. In their written plea agreements, each defendant reserved in the following language the right to appeal the district court's denial of the motion to dismiss:
 
 
 13
 Pursuant to Rule 11(a) of the Federal Rules of Criminal Procedure, the defendant conditions its plea upon the reservation of right to appellate review of any adverse determination concerning whether the admitted discharges were made to the "waters of the United States," as such term is used in the Clean Water Act, 33 U.S.C. § 1311, et seq., and if this defendant prevails on this issue in the trial court or on appeal, it shall be allowed to withdraw its plea.
 
 
 14
 J.A. 55, 63, 73.
 
 
 15
 Defendants Kupchick and Pawlak were sentenced to two years of unsupervised probation and were fined $10,000 each. The court suspended $5,000 of each fine on the condition that the suspended portion be paid as restitution to the Kentucky Hazardous Waste Management Fund. The corporate defendant was sentenced to pay a fine and restitution totaling $175,000, to make a public apology, and to develop a plan to clean up the contaminated site. These timely appeals followed.
 
 II.
 
 16
 Defendants contend that the district court erred in refusing to grant their motion to dismiss the indictment on the grounds that it did not allege any offense against the United States. This is a question of law which is reviewed de novo. United States v. Sangineto-Miranda, 859 F.2d 1501, 1512 (6th Cir.1988); Loudermill v. Cleveland Bd. of Educ., 844 F.2d 304, 308 (6th Cir.), cert. denied, 488 U.S. 941 and 488 U.S. 946 (1988).
 
 
 17
 In their motion to dismiss, defendants alleged that the indictment could not stand because it
 
 
 18
 [did] not charge offenses which affect or involve navigable waters of the United States or waters of the United States and, therefore, such alleged offenses [did] not, and cannot, represent offenses against the United States for which these defendants may be prosecuted.
 
 
 19
 J.A. 36. Defendants' supporting arguments are somewhat incoherent because defendants find themselves trapped between the strictures of Federal Rule of Criminal Procedure 12(b) and this court's decision in United States v. Ashland Oil and Transp. Co., 504 F.2d 1317 (6th Cir.1974).
 
 
 20
 Rule 12(b) permits the pretrial determination of defenses which are "capable of determination without the trial of the general issue...." However, if a defendant's pretrial motion requires the court to find facts that make up the elements of the case which would normally be reserved to the jury on trial of the general issue, the motion should be denied.
 
 
 21
 Rule 12(b)(1) of the Federal Rules of Criminal Procedure which cautions the trial judge that he may consider on a motion to dismiss the indictment only those objections that are "capable of determination without the trial of the general issue," indicates that evidentiary questions of this type should not be determined on such a motion.
 
 
 22
 United States v. Knox, 396 U.S. 77, 83 n. 7 (1969).
 
 
 23
 Defendants did not, and do not, seriously argue that the indictment fails to charge an offense cognizable by the laws of the United States. Indeed, the district court viewed defendants' argument on the motion to dismiss as conceding the facial validity of the indictment. J.A. 88. Instead, defendants argue that this ditch and this pond are not in fact tributaries of any navigable stream and thus are not waters of the United States. Brief of Appellants at 7, 8, 12, 18, and 22. This argument, however, is predicated on evidentiary material beyond the face of the indictment.
 
 
 24
 In United States v. Mann, 517 F.2d 259, 267 (5th Cir.1975), cert. denied, 423 U.S. 1087 (1976), the Fifth Circuit reversed a dismissal of an indictment because the district court erred in considering evidence before the trial.
 
 
 25
 Defendants continue to maintain here, as they did in the district court, that the indictment is insufficient to allege an offense against the United States. But they erroneously predicate this contention on evidence outside of the indictment which they introduced at the hearing on the motion to dismiss. As we have pointed out above, such evidence is irrelevant to a determination of whether the indictment itself is legally sufficient.
 
 
 26
 Accord United States v. King, 581 F.2d 800, 802 (10th Cir.1978); United States v. Gallagher, 602 F.2d 1139, 1142 (3d Cir.1979), cert. denied, 444 U.S. 1043 (1980); Universal Milk Bottle Service, Inc. v. United States, 188 F.2d 959, 962 (6th Cir.1951); cf. United States v. Calandra, 414 U.S. 338, 344-45 (1974); Costello v. United States, 350 U.S. 359, 362-64 (1956).
 
 
 27
 Despite defendants' attempt to characterize their issue as purely legal, their arguments are predicated on questions of fact not determinable prior to the trial of the general issue. Because the indictment was valid on its face, the district court correctly refused to pretry the evidence in this case, and, accordingly, it did not err in overruling the motion to dismiss.[1]
 
 
 28
 As for defendants' arguments concerning the scope of congressional authority to regulate water pollution, United States v. Ashland Oil and Transp. Co., 504 F.2d 1317 (6th Cir.1974), is controlling. In Ashland Oil, after an extensive review of the legislative history of the Federal Water Pollution Control Act Amendments of 1972 ("Act"), 33 U.S.C. §§ 1251-1376, we concluded that Congress meant to control the discharge of pollutants into the nonnavigable tributaries of navigable waters as well as the discharge of pollutants into the navigable waters themselves. We held that
 
 
 29
 Congress knew exactly what it was doing and that it intended the Federal Water Pollution Control Act to apply, as Congressman Dingell put it, "to all water bodies, including main streams and their tributaries." Certainly the Congressional language must be read to apply to our instant case involving pollution of one of the tributaries of a navigable river. Any other reading would violate the specific language of the definition just quoted and turn a great legislative enactment into a meaningless jumble of words.
 
 
 30
 Id. at 1325. We also held that Congress had the constitutional authority to prohibit discharges into nonnavigable tributaries of navigable waterways and that the government's burden of proof in criminal cases brought under the Act did not include proof that a navigable stream was in fact polluted by a discharge. Instead, the government need only prove that the discharge contaminated a tributary of a navigable stream. Id. at 1319, 1329.
 
 
 31
 It is of no consequence that the tributary allegedly polluted was a small one. In Quivira Mining Co. v. United States Envtl. Protection Agency, 765 F.2d 126, 129 (10th Cir.1985), cert. denied, 474 U.S. 1055 (1986), the Tenth Circuit found that a discharge into an arroyo, a dry gully, could violate the Act because "surface flow occasionally occurs, at times of heavy rainfall, providing a surface connection with navigable waters independent of the underground flow." In United States v. Texas Pipeline Co., 611 F.2d 345, 347 (10th Cir.1979), the Tenth Circuit also held that the pollution of a small, unnamed tributary of navigable waters came within the prohibition of that Act.
 
 
 32
 It was flowing a small amount of water at the time of the spill. Whether or not the flow continued into the Red River at that time, it obviously would during significant rainfall. The intent of the Act was to cover all tributaries of waters like the Red River. See United States v. Ashland Oil & Transp. Co., 504 F.2d 1317 (6th Cir.1974). It makes no difference that a stream was or was not at the time of the spill discharging water continuously into a river navigable in the traditional sense.
 
 
 33
 Finally, in Texas Mun. Power Agency v. Adm'r of United States Envtl. Protection Agency, 836 F.2d 1482, 1487 (5th Cir.1988), the Fifth Circuit broadly construed the coverage of the Act and deferred to a regulation of the Environmental Protection Agency, 40 C.F.R. § 122.2, which defined "waters of the United States" to include "[a]ll other waters such as intra-state lakes, rivers, streams (including intermittent streams) ..." and their tributaries. Citing United States v. Ashland Oil and Transp. with approval, the court found EPA's definition to be "expansive and, in keeping with the intent of Congress, the courts construe it liberally to give the broadest possible reach to EPA regulation." Thus, even if defendants' challenge to the indictment could be construed as a purely legal one requiring no factual predicate, the law is clear, particularly in this circuit, that even the pollution of a small, nonnavigable tributary of a navigable waterway constitutes pollution of the waters of the United States. Therefore, the indictment in this case properly charged violations of 33 U.S.C. §§ 1311(a) and 1319(c)(2)A.
 
 III.
 
 34
 For the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Had the district court considered the proffers of the parties, it would have found that the government had evidence that the pond in question overflowed into a regular channel about 1.5 feet wide which became a stream that eventually carried water into Lake Cumberland. J.A. 196-201